NO. 07-09-00058-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JUNE 29, 2010

_____

BUD PURDY, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 84TH DISTRICT COURT OF HUTCHINSON COUNTY;

NO. 10,199; HONORABLE WILLIAM D. SMITH, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant, Bud Purdy, was convicted of aggravated assault with a deadly weapon[1] and sentenced to serve 18 years in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ).  Appellant appeals contending that the evidence is factually insufficient to support the judgment.  We reverse.

_____

[1] See TEX. PENAL CODE ANN. § 22.02(a)(2) (Vernon Supp. 2009).

Factual Background

On April 24, 2008, Skyler Hogan was walking to the home of his friend, Stetson Reeves, in Fritch, Texas. As Skyler walked down Bonner Street in Fritch, he was approached by appellant, who asked, "Are you the owner of a red truck?" Skyler advised appellant that he did not own a red truck but that his uncle did. Appellant then stated that Skyler's uncle owed him "$500 and jail time."[2] As Skyler and appellant continued to face each other, appellant became more and more agitated. Eventually, appellant pulled a knife out of his pants pocket. Skyler testified that he did not get a real good look at the knife but he described it as being about 1 inch wide, tapered to a sharp point, and had a blade that was estimated at three inches long.[3] Skyler further testified that during the time appellant was holding the open knife, appellant kept saying "I'll stab you, I'm crazy" or "I'm psycho, I'll stab you." In describing how he reacted to appellant's statements, Skyler explained that it caused him concern. Later, during further examination by the State, Skyler said that the open knife caused him to feel threatened. Skyler did admit that, at one point during the confrontation with appellant, he told appellant to put the knife away and that he did not know why appellant would want to stab him. As Skyler's friend, Stetson Reeves, walked up, appellant put the knife back in his pocket and walked away.

---

[2] This was a reference to appellant's prior conviction for assault that resulted in a fine of $500 and 15 days in jail. Appellant believed that Skyler's uncle, Tom Pena, had been the person who reported the assault to the police.

[3] During direct examination, Skyler estimated the length of the blade by demonstrating its length on a ball point pen. The prosecutor then measured that length with a ruler.

Approximately a week after the confrontation, Deputy Eric Munoz, of the Hutchison County Sheriff's Office went to appellant's home and began visiting with him about the assault on Skyler. Initially, Munoz suspected appellant's roommate, Charles Beaver, was the assailant. However, Munoz testified that as he spoke with appellant about the incident, appellant began acting extremely nervous. After observing appellant's demeanor, Munoz began focusing his questions on appellant having been the assailant. Appellant then admitted that he was the one who approached Skyler, however, he denied ever pulling a knife. After initially confronting appellant, Munoz called Skyler on a cell phone and had him come to the location where Munoz was interviewing appellant. Upon seeing appellant, Skyler advised Munoz that appellant was the man who had assaulted him.

Munoz continued to interview appellant and positioned his patrol car such that he was able to record a significant portion of the interview. During the interview, appellant admitted that he did confront Skyler about someone owing him $500 and 15 days because of the fine and jail sentence he had received in the earlier assault case. Ultimately, Munoz presented a report of his investigation to the Hutchinson County District Attorney, and appellant was indicted for the instant offense. A jury convicted appellant and sentenced him to serve 18 years confinement in the ID-TDCJ.

Appellant has perfected his appeal and alleges that the evidence was factually insufficient to sustain the judgment in two particulars. First, appellant alleges that the evidence was insufficient to show that the knife at issue was a deadly weapon. Second, appellant alleges that the evidence was insufficient to prove that Skyler was in fear of

3

imminent bodily injury or death. Agreeing with appellant on the issue of the deadly weapon, we reverse the judgment of the trial court.

## Standard of Review

When an appellant challenges the factual sufficiency of the evidence supporting his conviction, the reviewing court must determine whether, considering all the evidence in a neutral light, the jury was rationally justified in finding the appellant guilty beyond a reasonable doubt. See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). In performing a factual sufficiency review, we must give deference to the fact finder's determinations if supported by evidence and may not order a new trial simply because we may disagree with the verdict. See id. at 417. As an appellate court, we are not justified in ordering a new trial unless there is some objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the jury's verdict. See id. Additionally, an appellate opinion addressing factual sufficiency must include a discussion of the most important evidence that appellant claims undermines the jury's verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). The Texas Court of Criminal Appeals has recently declared that, when reviewing the evidence for factual sufficiency, the reviewing court should measure the evidence in a neutral manner against a "hypothetically correct jury charge." Vega v. State, 267 S.W.3d 912, 915 (Tex.Crim.App. 2008) (citing Wooley v. State, 273 S.W.3d 260, 268 (Tex.Crim.App. 2008)).

Analysis

In order to convict appellant of the indicted offense, the State was required to prove that: 1) appellant, 2) on or about April 24, 2008, 3) intentionally and knowingly, 4) used a deadly weapon, to-wit, a knife, 5) that in the manner of its use and intended use was capable of causing imminent bodily injury or death, 6) and did threaten Skyler Hogan with imminent bodily injury by the use of the deadly weapon. Appellant's two contentions regarding the factual sufficiency of the evidence involve the evidence supporting the jury verdict that the knife in question was a deadly weapon and whether Skyler was in fear of imminent bodily injury. We will address only the deadly weapon issue.

Deadly Weapon

A knife is not defined as a "per se" deadly weapon in the Penal Code. See TEX. PENAL CODE ANN. § 1.07(a)(17)(A) (Vernon 2008); Jaramillo v. State, No. 07-08-0148-CR, 2009 Tex.App. LEXIS 1781, at *7 (Tex.App.—Amarillo March 13, 2009, no pet.) (not designated for publication) (citing Thomas v. State, 821 S.W.2d 616, 619 (Tex.Crim.App. 1991)). Rather, the State must prove that, in the manner of its use and intended use, the knife is capable of causing death or serious bodily injury. See TEX. PENAL CODE ANN. § 1.07(a)(17)(B); Jaramillo, 2009 Tex.App. LEXIS 1781, at *7. When addressing the issue of whether an instrumentality is a deadly weapon, in this case a knife, under Section 1.07(a)(17)(B), the Texas Court of Criminal Appeals has written that the "placement of the word 'capable' is crucial to understanding this method of determining deadly-weapon status." Tucker v. State, 274 S.W.3d 688, 691

5

(Tex.Crim.App. 2008). The State is not required to prove that the knife's use or intended use actually caused death or serious bodily injury but that the use or intended use is capable of causing death or serious bodily injury. Id.

In Tucker, the operative facts were that the victim had received two puncture wounds. Id. at 688. This fact pattern led the court to state that, "the injuries suffered by the victim can by themselves be a sufficient basis for inferring that a deadly weapon was used." Id. at 691-92. Because the Texas Court of Criminal Appeals felt that the court of appeals failed to take into account all of the facts, most especially the stab wounds of the victim, the decision of the court of appeals was reversed and the evidence was found to be legally sufficient to support the jury's verdict of guilty to the charge of aggravated assault with a deadly weapon. Id. at 92.

Subsequent to the Tucker opinion, this court, in Jaramillo, considered the factual sufficiency of the evidence to support a jury verdict of guilty of aggravated assault where the operative question was whether or not the weapon used, a knife, was a deadly weapon. See Jaramillo, 2009 Tex.App. LEXIS 1781, at *1. As in the case currently before the court, no knife was ever introduced into evidence. The evidence regarding the nature of the knife was that the victim testified that the defendant stuck a knife in the back of her ear. Id. Further, upon arrival at the emergency room, the victim presented with a stab wound to the upper chest. Id. at *13. The only testimony regarding the characteristics of the knife in Jaramillo came from the defendant's roommate, who testified the defendant carried a gray knife with a little hooked point on the end. Id. at *7. Relying on Tucker we held that, even without more testimony regarding the

6

characteristics of the knife in question, the wounds suffered by the victim were enough to make the evidence factually sufficient to support the jury's verdict. Id. at *15-*16.

In the case at bar, we find no injuries to the victim. Tucker, 274 S.W.3d at 691-92. We have no expert testimony regarding the characteristics of the knife in question. See Rogers v. State, 877 S.W.2d 498, 500 (Tex.App.—Fort Worth 1994, pet. ref'd) (actual knife not introduced but similar knife introduced with expert police testimony that such a knife was capable of causing serious bodily injury). We have very little testimony regarding the physical description of the knife in question. See Brown v. State, 716 S.W.2d 939, 946 (Tex.Crim.App. 1986). Further, the proximity of appellant to Skyler was such as to make a finding of a deadly weapon less likely. See Tisdale v. State, 686 S.W.2d 110, 115 (Tex.Crim.App. 1983).

In the case before us, the victim, Skyler, suffered no wounds. In fact, Skyler's testimony was that the knife never touched him. From the record, it appears that appellant kept the knife in question down by his side the entire time he confronted Skyler. Skyler testified that he could not see the knife clearly and could not describe exactly what it looked like. Further, the only evidence regarding the characteristics of the knife was a small amount of comparison testimony when Skyler was shown a ballpoint pen and estimated that the blade of the knife was about as long as the bottom part of the pen. Subsequently, the State's attorney measured this length to be about three inches. When asked if he could tell how sharp the knife was, Skyler said he could not. The record is not clear regarding the proximity of appellant to Skyler.

7

Based upon the record we have been presented with, the jury's decision to find appellant guilty beyond a reasonable doubt is against the great weight and preponderance of the evidence. <u>Watson</u>, 204 S.W.3d at 417. We therefore find the evidence to support the judgment that appellant used and intended to use a deadly weapon, to-wit, a knife, that in the manner of its use and intended use was capable of causing death and serious bodily injury to be factually insufficient. Appellant's first issue is sustained.

## Conclusion

Having found the evidence factually insufficient, we reverse and remand this matter to the trial court for further proceedings consistent with this opinion.

Mackey K. Hancock
Justice

Do not publish.